Reed, P. J.,
delivered the opinion of the court.
Appellee brought suit against the appellant to recover $1,500, or 75 per cent of the sum of $2,000, on a policy or certificate of insurance executed upon the life of appellee, delivered the 8th day of February, 1881. By the terms of the contract, the amount was to be paid to insured after the expiration of twelve years from date in case the insured was still living, and upon his death, before that time.
The complaint alleges the payment of $15.00 on the day of the' date of the policy, compliance on the part of the *276 insured with all the requirements of the contract, that the time (twelve years) had expired, that the insured was still living, demand for the sum for which suit was brought, and refusal of appellant to pay.
The company (appellant) was a mutual concern, in which, in case of the death of a member, calls or assessments were made upon the individual members to pay the policy of the deceased member.
The defense relied upon in answer was that the plaintiff failed to pay a call made and due June 21, 1892, and another on the 4th of August, 1892, and “ that thereafter, and by reason of the violations aforesaid, the said certificate of membership ceased and determined, and the .plaintiff was no longer treated or regarded as a member of this association, and said certificate of membership, and the insurance or endowment thereunder, from thence hitherto has not been, and is not now, in force, nor the plaintiff entitled to any of the benefits thereof.”
Trial was had to a jury, and, at the close of the evidence, plaintiff asked the court to instruct the jury to find for the plaintiff, which motion was granted, and a judgment for plaintiff for $1,500 entered, from which this appeal was prosecuted.
It appears that for about eleven years and a half the contract of insurance was in force and unquestioned. The insured had paid all demands, six months before it would expire, and the insured be entitled to all its benefits. It is claimed that the insured made such default in payment of assessments as to warrant the company in declaring it forfeited and in refusing to renew on account of the age of appellee. Condition Ho. 8, upon which the supposed forfeiture was based, is as follows : “If the assured shall, at any time, within forty days after receiving due notice, fail to pay, or cause to be paid, the assessments at the office of the association, and in accordance with the rules and regulations of said association, then, and in every such case, the association shall not be liable for the payment of any sum whatsoever, *277 and this certificate shall cease and determine.” Condition No. 5 is : “ A printed or written notice directed to the address as last given by a member and deposited in the post-office, or delivered by an agent of the association, shall be deemed a legal notice.”
The only witness sworn was one A. H. Northrop, who testified for the defendant, was employed by it, and had been for six or seven years. He identified the different papers. His knowledge was very limited and evidence very indefinite. He said: “I am testifying from the records of my office. It would be a matter of impossibility to testify from my own memory in a matter of dates and figures such as this, regarding dates, numbers or assessments I could not remember.” As the whole defense or forfeiture depended upon dates, numbers and assessments, it was important that the facts be established from better data than inference from the usual course of business and files in the office. It appears from the dates on files in the office and the testimony of the witness that three assessments of $1.00 each were made and' embraced in a notice dated May 13, 1892, in response to which appellee sent $2.00, leaving $1.00 unpaid. Witness testified that the $2.00 paid was not within the forty days, but he did not show when it was received; but it appears to have been accepted and retained, and that no notice was taken of the default at that time or that appellee’s attention was called to it. Subsequently another notice of assessments for $2.00 was sent to appellee, dated June 25, 1892, which was remitted; also the former dollar until then unpaid. Witness testified it was received one day too late. It should have been at the office August Jfth, but was not received until the 5th. Here is a discrepancy I fail to understand, which shows the want of knowledge on the part of the witness, or the unreliable character of his evidence. The letter containing the remittance from appellee was dated '•'•Durango, 15th Aug." The reply of the company put in evidence, is dated August 17th, in which it is said, “ Which we this day received." That reply contained the *278 $8.00 received and the $2.00 received in response to the call of May 13th, which had been retained from some time in June, and appellee was then informed that he had forfeited his insurance, and “that on account of your age it will be impossible for us to reinstate.” The learned district judge found the alleged notices sent to appellee void and insufficient, and with this we agree. If they were sent, the uncertainty of the evidence establishing the time they were sent and the date of receipt of money was so vague and indefinite as to be worthless to establish a default. The $2.00 in response to the May call were received about June 21st and retained until August 17th. The default of $1.00 existed all that time, and was either waived or overlooked. The'witness said the “money was received conditionally.” We are not informed what the conditions were, and there is no evidence of notice to appellee of a conditional acceptance, a forfeiture of insurance, or demand for the payment of the $1.00. in default. Witness testified: “We always send as much as two notices.” There was no evidence of a second notice in either instance to the appellee.
In regard to the second case, witness testified the money came one day too late. Taking the date of the notice, June 25th, and the day of payment, August 5th, excluding one date and including the other, there was no default. The witness testified that the notice bearing date June 25th would be sent out from the 24th to the 26th. Thus the date of sending or mailing, and not the date upon the paper, becomes important. There is also a very marked discrepancy between the testimony of the witness to establish a default, the notiee put in evidence, and condition Ho. 3 of the contract, upon which the forfeiture is supposed to be based. In the notice sent is the following: “ By referring to the conditions of your certificate of membership, you will observe that the assessment made for the following deceased members, must le received within forty days from May 13th, 1892 (the date of the notice), or not later than June 81st,” regardless of the date of sending. This shows great igno *279 ranee of the condition relied upon for the forfeiture. The language of the condition is: “ If the assured shall at any time within forty days after receiving due notice fail to pay or cause to be paid the assessments,” etc. It will readily be seen that the computation of time cannot be determined by the date upon the notice, nor from the date of mailing, if such proof was offered, but must be computed from the date the insured received due notice. See Grand Lodge v. Besterfield, 37 Ill. App. 522. Hence we conclude that as to the last assessment of $2.00 no default was proved.
Forfeitures must be clearly established. They are defenses closely scrutinized and not favored by courts. As to the supposed forfeiture by failure to pay the $1.00, the claim seems technical 'and trivial. To have been available, it must have been asserted while the insured was delinquent. Having, during all that time, waived the default, and followed up by a subsequent assessment, it was too late, after-receiving the money,-to go back and declare forfeiture. Authorities in support of these positions are numerous. See Niblack on Mut. Ben. Soc., secs. 339 and 345; Chicago Life Ins. Co. v. Warner, 80 Ill. 410; Mutual Life Ins. Co. v. Amerman, 119 Ill. 329; Viall v. Genesee Mut. Ins. Co., 19 Barb. (N. Y.) 440; Swertser v. Odd Fellows’ Assn., 117 Ind. 97 ; Nat. Mut. Ben. Assn. v. Jones, 84 Ky. 110; Life Ins. Co. v. American, 16 Ill. App. 528; Life Ins. Co. v. Pierce, 75 Ill. 426; Ins. Co. v. Hazlett, 105 Ind. 112.
It is next contended that appellant, being a mutual insurance concern, and having contracted in this language, “ Does assure the life of Martin Colmar in the amount of such sum as will equal 75 per cent of the amount collected of the assessment made for the payment thereto, but not to exceed two thousand dollars,” that in suing for the amount that he was insured, or for $1,500, he had mistaken his remedy; that it should have been a proceeding by mandamus to compel the company to make an assessment to pay the claim. 2d. That if the plaintiff is permitted to sue the association and recover a money judgment, he must allege and show the *280 amount that would be realized by an assessment and have a verdict for only such amount. 3d. That he must prove a demand for an assessment and the refusal of the association to make it. 4th. That he must aver the number of members subject to assessment for his benefit. 5th. Or must show that an assessment has been made and collected.
Several authorities are cited in support of these positions, some of which, particularly those from the state of Iowa, sustain the contention; but those decisions were by a divided court. In others cited, the contracts were different; the amount to be realized was $1.00 to each member. Here there was no restriction as to the amount that could be assessed against each member shown or claimed. Presumably the amount to be assessed upon each member would be sufficient to make the aggregate amount required. Nor can we agree to the proposition that mandamus was the proper-remedy. The amount assured might possibly, under the peculiar wording of the contract, be reduced and limited by tbe amount of the assessment collected. If not sufficient, it should be matter of defense. Nor could the plaintiff reasonably be required to make proof, where the data was entirely within the control of the defendant, as to the number of members and the amount that could be collected by an assessment.
By the contract of insurance it was the duty of the officers to make an assessment when the payment was due. There is nothing in the contract compelling a party to resort to a proceeding by mandamus to make them perform such duty. The contract for pajunent having matured and the money being due, it was their only duty to provide funds, more or less, and pay the claim. The contract is absolute to pay within ninety days after proof of death or the lapse of the time named. As shown by the evidence, forty days was required to collect the assessment, giving fifty remaining days in which to pay. The power of the corporation to make the assessment could be exercised voluntarily. It did not depend upon a mandamus to set it in motion. The evidence *281 shows that the voluntary exercise of it had been the course pursued. It does not appear that in any former case parties had been required to bring a compulsory suit.
On a contract identical with the one under consideration and those of the same character, or nearly identical, the authorities are numerous in support of the views announced above. See Niblack on Mut. Ben. Soc., secs. 388, 392, 394 to 401; 2 May on Ins., sec. 563a ; Freeman v. Nat. Ben. Soc., 42 Hun (N. Y.), 252; Oriental Ins. Co. v. Clancey, 70 Md. 101. Bates v. Detroit Mut. Ben. Assn., 47 Mich. 646, where it is held: “ Mandamus does not lie to compel a mutual benefit insurance company to levy an assessment to pay the amount falling due upon the death of a member. The proper course is to bring suit upon the undertaking of the company.” See, also, Elkhart Assn. v. Houghton, 103 Ind. 286 ; Lodge v. Knights, 117 Ind. 489; Loeders v. Hartford Co., 4 McCrary, 149; Kan. Pro. Assn. v. White, 14 Pac. Rep. 275; Kan. Pro. Union v. Gardner, 21 Pac. Rep. 233; O'Brien v. Home Ben. Soc., 117 N. Y. 310.
Several authorities hold that the suit should have been brought for the maximum, $2,000, instead of $1,500, and putting the burden of reducing it and showing the proper amount upon the defendant, but in this oase the failure to sue for the full amount cannot prejudice appellant.
The judgment of the district court will be affirmed.

Affirmed.